1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  MARIA M. BARRIOS,              ) Case No. EDCV 15-0401-JPR
                                   )
12                Plaintiff,       )
                                   ) **MEMORANDUM DECISION AND ORDER**
13          v.                     ) **REVERSING COMMISSIONER**
                                   )
14  CAROLYN W. COLVIN, Acting      )
    Commissioner of Social         )
15  Security,                      )
                                   )
16                Defendant.       )
    _____    )

17

18  **I.   PROCEEDINGS**

19       Plaintiff seeks review of the Commissioner's final decision

20  denying her applications for Social Security disability insurance

21  benefits ("DIB") and supplemental security income benefits

22  ("SSI").  The parties consented to the jurisdiction of the

23  undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c).  The

24  matter is before the Court on the parties' Joint Stipulation,

25  filed December 28, 2015, which the Court has taken under

26  submission without oral argument.  For the reasons stated below,

27  the Commissioner's decision is reversed and this action is

28  remanded for further proceedings.

                                  1

**II.   BACKGROUND**

Plaintiff was born in 1956.  (Administrative Record ("AR") 155.)  She completed 12th grade and worked as a secretary for a moving company.  (AR 191, 218.)

On February 6, 2013, Plaintiff filed applications for DIB and SSI (AR 12), alleging that she had been unable to work since January 15, 2013, because of an enlarged heart, diabetes, carpal-tunnel syndrome, poor kidney function, high blood pressure, and shortness of breath.  (AR 190.)  After her applications were denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge.  (AR 100-01.)  A hearing was held on July 9, 2014, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert.  (AR 23-43.)  In a written decision issued September 5, 2014, the ALJ found Plaintiff not disabled.  (AR 10-21.)  This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole.  See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance.  Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether

substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's. Id. at 720-21.

**IV.   THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A.   The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work

1  activities; if not, the claimant is not disabled and her claim
2  must be denied.  §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

3       If the claimant has a "severe" impairment or combination of
4  impairments, the third step requires the Commissioner to
5  determine whether the impairment or combination of impairments
6  meets or equals an impairment in the Listing of Impairments
7  ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix
8  1; if so, disability is conclusively presumed.
9  §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

10      If the claimant's impairment or combination of impairments
11  does not meet or equal an impairment in the Listing, the fourth
12  step requires the Commissioner to determine whether the claimant
13  has sufficient residual functional capacity ("RFC")[1] to perform
14  her past work; if so, she is not disabled and the claim must be
15  denied.  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The claimant
16  has the burden of proving she is unable to perform past relevant
17  work.  <u>Drouin</u>, 966 F.2d at 1257.  If the claimant meets that
18  burden, a prima facie case of disability is established.  <u>Id.</u>

19      If that happens or if the claimant has no past relevant
20  work, the Commissioner then bears the burden of establishing that
21  the claimant is not disabled because she can perform other
22  substantial gainful work available in the national economy.
23  §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); <u>Drouin</u>, 966 F.2d at 1257.
24  That determination comprises the fifth and final step in the
25  sequential analysis.  §§ 404.1520(a)(4)(v), 416.920(a)(4)(v);

26  _____

27      [1] RFC is what a claimant can do despite existing exertional
    and nonexertional limitations.  §§ 404.1545, 416.945; <u>see Cooper</u>
28  <u>v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

1    Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

2          B.    The ALJ's Application of the Five-Step Process

3          At step one, the ALJ found that Plaintiff had not engaged in

4    substantial gainful activity since January 15, 2013, the alleged

5    onset date.  (AR 14.)  At step two, he concluded that Plaintiff

6    had severe impairments of supermorbid obesity with insulin-

7    dependent diabetes mellitus type II, diabetic peripheral

8    neuropathy, asthma, and essential hypertension.  (Id.)  At step

9    three, he determined that Plaintiff's impairments did not meet or

10   equal a listing.  (Id.)

11         At step four, the ALJ found that Plaintiff had the RFC to

12   perform sedentary work but must stand and stretch every 15

13   minutes for one minute and use an oxygen tank on wheels.  (AR

14   15.)  Plaintiff could be exposed to no more air pollutants than

15   found in an air-conditioned environment, and she could frequently

16   handle and constantly finger.  (Id.)

17         Based on the VE's testimony, the ALJ concluded that

18   Plaintiff could perform her past relevant work as a secretary.

19   (AR 17.)  Accordingly, he found her not disabled.  (AR 18.)

20   **V.   DISCUSSION**

21         Plaintiff claims that the ALJ failed to pose a complete

22   hypothetical question to the VE, properly consider her obesity,

23   and properly assess her credibility.  (J. Stip. at 2-3.)  Because

24   the ALJ's findings concerning Plaintiff's credibility were

25   insufficient, the matter must be remanded for further analysis

26   and findings.  The Court therefore does not reach the other two

27   issues.

28

1        A.   <u>The ALJ Failed to Adequately Explain Why He Found</u>
2             <u>Plaintiff Only Partially Credible</u>
3        Plaintiff contends that the ALJ improperly rejected her
4   testimony based solely on a lack of corroborating medical
5   findings.  (J. Stip. at 16 (citing <u>Vertigan v. Halter</u>, 260 F.3d
6   1044, 1049 (9th Cir. 2001).)
7        1.   <u>Applicable law</u>
8        An ALJ's assessment of symptom severity and claimant
9   credibility is entitled to "great weight."  <u>See</u> <u>Weetman v.</u>
10  <u>Sullivan</u>, 877 F.2d 20, 22 (9th Cir. 1989); <u>Nyman v. Heckler</u>, 779
11  F.2d 528, 531 (9th Cir. 1986).  "[T]he ALJ is not required to
12  believe every allegation of disabling pain, or else disability
13  benefits would be available for the asking, a result plainly
14  contrary to 42 U.S.C. § 423(d)(5)(A)."  <u>Molina v. Astrue</u>, 674
15  F.3d 1104, 1112 (9th Cir. 2012) (citing <u>Fair v. Bowen</u>, 885 F.2d
16  597, 603 (9th Cir. 1989)).
17       In evaluating a claimant's subjective symptom testimony, the
18  ALJ engages in a two-step analysis.  <u>See</u> <u>Lingenfelter</u>, 504 F.3d
19  at 1035-36.  "First, the ALJ must determine whether the claimant
20  has presented objective medical evidence of an underlying
21  impairment [that] could reasonably be expected to produce the
22  pain or other symptoms alleged."  <u>Id.</u> at 1036.  If such objective
23  medical evidence exists, the ALJ may not reject a claimant's
24  testimony "simply because there is no showing that the impairment
25  can reasonably produce the <u>degree</u> of symptom alleged."  <u>Smolen v.</u>
26  <u>Chater</u>, 80 F.3d 1273, 1282 (9th Cir. 1996) (emphasis in
27  original).
28       If the claimant meets the first test, the ALJ may discredit

                                    6

1  the claimant's subjective symptom testimony only if he makes
2  specific findings that support the conclusion.  See Berry v.
3  Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010).  Absent a finding or
4  affirmative evidence of malingering, the ALJ must provide "clear
5  and convincing" reasons for rejecting the claimant's testimony.
6  Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (as
7  amended); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090,
8  1102 (9th Cir. 2014).  The ALJ may consider, among other factors,
9  (1) ordinary techniques of credibility evaluation, such as the
10 claimant's reputation for lying, prior inconsistent statements,
11 and other testimony by the claimant that appears less than
12 candid; (2) unexplained or inadequately explained failure to seek
13 treatment or to follow a prescribed course of treatment; (3) the
14 claimant's daily activities; (4) the claimant's work record; and
15 (5) testimony from physicians and third parties.  Rounds v.
16 Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015) (as
17 amended); Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir.
18 2002).  If the ALJ's credibility finding is supported by
19 substantial evidence in the record, the reviewing court "may not
20 engage in second-guessing."  Thomas, 278 F.3d at 959.

21          2.  Relevant background

22     In reports dated March 25, 2013, Plaintiff wrote that she
23 was unable to stand for more than 20 minutes, bend down, or squat
24 because of painful, swollen legs.  (AR 201, 207.)  She could not
25 sit "for a long time" and could walk only 30 yards before needing
26 a 10-minute rest.  (Id.)  Her diabetes affected her eyesight, and
27 she needed to urinate "often on some days."  (AR 207, 209.)  Her
28 daily activities included straightening up around the house,

watching television, watering the front and back yards with her left hand, and feeding the dog.  (AR 202.)  She cooked once a week, did laundry twice a week, shopped for groceries in stores once a week for 30 minutes, cared for her seven-year-old granddaughter once a week, and attended her granddaughter's sports games twice a week.  (AR 203-06.)  She reported that someone needed to accompany her to the store and her granddaughter's games.  (AR 206.)  She had no problems with memory, attention, concentration, ability to complete tasks, personal care, or getting along with others.  (AR 207.)

In a disability report dated May 21, 2013, Plaintiff reported an increase in the severity of her symptoms, including difficulty balancing and gripping with her right hand.  (AR 210.) Her listed diagnoses included anxiety, depression, "difficulties with social functioning," emotional withdrawal, and isolation. (AR 214.)  She could not eat without spilling food and needed help with personal care and administering insulin.  (AR 210, 213.)

In an August 18, 2013 function report, Plaintiff reiterated the symptoms from March 2013 and added decreased kidney function, an inability to stand, rashes on both hands and arms, and a tingling sensation in her fingers.  (AR 237.)  She reported that her illnesses affected her memory, concentration, and ability to complete tasks.  (AR 242.)  Her daily activities had not significantly changed from the March 2013 function report.  (AR 238-41.)  Plaintiff listed side effects from her prescribed medications, such as numbness, swelling, blurred vision, rash, dizziness, and joint pain.  (AR 244.)  She had no problem with

8

personal care but could pay attention for only 20 minutes.  (AR 238, 242.)

At the July 2014 ALJ hearing, Plaintiff testified that she had trouble picking things up, as her hands would get numb and heavy.  (AR 32-33.)  She could not sit for more than approximately 10 minutes, including at the ALJ hearing, without her legs feeling numb and requiring her to stand up, which had led to her losing her balance and falling.  (AR 33.)  She was able to walk a distance of approximately six house lengths before becoming tired.  (AR 34.)  Walking that distance and returning home would take between 20 and 45 minutes.  (AR 34-35.)  Finally, Plaintiff testified that she had used a prescribed oxygen tank since October 2013, after suffering a "mini stroke."  (AR 28-37.)

3.   <u>Analysis</u>

The ALJ credited some of Plaintiff's subjective complaints, such as her asserted inability to stand or walk for prolonged periods, and he therefore limited her to a range of sedentary work.  (AR 17.)  But the ALJ discredited Plaintiff's complaints to the extent they were inconsistent with her RFC, finding that although her "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,] . . . [her] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible."  (AR 16.)  As discussed below, the ALJ's findings were insufficient.

The ALJ discounted Plaintiff's subjective complaints because they were unsupported by the medical record.  (AR 17.)  As to Plaintiff's complaints of shortness of breath, foot pain, and hand numbness, the ALJ found "scant evidence of any neurological

or pulmonary problems when [Plaintiff] was hospitalized for six days at the end of September 2012." (AR 16; see AR 255-56, 318-19.) Furthermore, "she did not complain of hand numbness until January 2013 with minimal decrease in grip strength bilaterally." (AR 16; AR 322-23.) Plaintiff first saw a pulmonologist on February 3, 2014; she reported a history of shortness of breath with wheezing, cough and phlegm, and asthma. (AR 16, 367-68.) The ALJ noted that the treatment record was incomplete but showed that Plaintiff was not using a rescue inhaler at the time of the pulmonary consultation, her lungs were clear to auscultation bilaterally, and her breathing was normal. (Id.) The ALJ also noted that on July 5, 2014, Plaintiff was treated in an emergency room for an asthma attack. (AR 16, 352.) The ALJ found that a brain MRI and chest x-ray did not show "anything of medical [significance]," and emergency-room records did not include any physical-examination or laboratory findings. (AR 16, 351-66.) Finally, the ALJ also found that Plaintiff's poor eyesight had been corrected to "20/20-1" by her optometrist as of April 19, 2011. (AR 16; see AR 343.)

Although the ALJ's findings appear to be supported by substantial evidence, the lack of objective medical evidence corroborating Plaintiff's subjective symptom testimony cannot alone support the ALJ's adverse credibility finding. See Robbins, 466 F.3d at 883 (explaining that ALJ may not make negative credibility finding "solely because" claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence"); Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (stating that ALJ may consider "lack of medical

10

evidence" as factor in credibility analysis, but it "cannot form
the sole basis for discounting pain testimony").  The ALJ did not
provide any other reasons for discounting Plaintiff's
credibility.[2]

    Thus, even if the Court were to agree that the objective
medical evidence did not support Plaintiff's allegations of
disabling pain, remand is still warranted because the ALJ failed
to give any other clear and convincing reason for discounting her
credibility.  See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir.
2004) (reversing Commissioner when ALJ rejected plaintiff's pain
testimony solely for lack of objective medical evidence);
Figueroa v. Colvin, No. CV 14-06522-GJS, 2015 WL 4331300, at *2
(C.D. Cal. July 15, 2015) (remanding for further proceedings
because ALJ failed to provide clear and convincing reason for
discounting plaintiff's credibility "apart from the lack of
objective medical evidence").

    The Commissioner argues that "[Plaintiff] testified that she
believed that she could return to her former work . . . [which]
directly contradicts any claim that she is incapable of working."

---

    [2] The ALJ did note that Plaintiff "has not been prescribed
any narcotic medication for pain." (AR 17.)  The Commissioner
does not argue that on the basis of this one sentence the ALJ
rejected Plaintiff's credibility because she had received only
conservative treatment, which is a legitimate reason.  See Parra,
481 F.3d at 751 (evidence of conservative treatment sufficient to
discount claimant's testimony regarding limitations); (see also
J. Stip. at 17-19).  Moreover, the ALJ made the statement in the
context of discussing the lack of objective medical evidence
supporting Plaintiff's subjective pain complaints.  Accordingly,
the Court does not consider this one sentence to amount to a
separate reason upon which the ALJ found Plaintiff only partially
credible.

1  (J. Stip. at 18-19.)  Although this may be a valid reason for
2  discounting Plaintiff's credibility, see Rounds, 807 F.3d at 1006
3  (ALJ may consider claimant's inconsistent statements); Verduzco
4  v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (in assessing
5  credibility, ALJ can consider whether plaintiff's statements were
6  inconsistent with other statements and evidence), the ALJ did not
7  cite Plaintiff's testimony that she believed she could do her
8  previous job as a reason for discounting her credibility.  (See
9  AR 16-17.)  As such, the Court cannot rely on it to affirm the
10 ALJ's credibility determination.  See Burrell v. Colvin, 775 F.3d
11 1133, 1139 (9th Cir. 2014) (rejecting government's argument that
12 ALJ's findings concerning claimant's treatment for headaches
13 supported adverse credibility decision because ALJ "never stated
14 that he rested his . . . credibility determination on those
15 findings").

16        In sum, the ALJ's explanation for his adverse credibility
17 determination was insufficient and remand is appropriate to allow
18 him to reevaluate or more fully explain that finding.  Plaintiff
19 is entitled to remand on this ground.

20        B.   Remand for Further Proceedings Is Appropriate

21        When, as here, an ALJ errs in denying benefits, the Court
22 generally has discretion to remand for further proceedings.  See
23 Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as
24 amended).  When no useful purpose would be served by further
25 administrative proceedings, however, or when the record has been
26 fully developed, it is appropriate under the "credit-as-true"
27 rule to direct an immediate award of benefits.  See id. at 1179
28 (noting that "the decision of whether to remand for further

1   proceedings turns upon the likely utility of such proceedings");
2   Garrison v. Colvin, 759 F.3d 995, 1019-20 (9th Cir. 2014).

3       Under the credit-as-true framework, three circumstances must
4   be present before a court may remand to the ALJ with instructions
5   to award benefits:

6       (1) the record has been fully developed and further
7       administrative proceedings would serve no useful purpose;
8       (2) the ALJ has failed to provide legally sufficient
9       reasons for rejecting evidence, whether claimant
10      testimony or medical opinion; and (3) if the improperly
11      discredited evidence were credited as true, the ALJ would
12      be required to find the claimant disabled on remand.

13  Garrison, 759 F.3d at 1020; Treichler, 775 F.3d at 1100-01.
14  When, however, the ALJ's findings are so "insufficient" that a
15  court cannot determine whether the rejected testimony should be
16  credited as true, the court has "some flexibility" in applying
17  the credit-as-true rule.  Connett v. Barnhart, 340 F.3d 871, 876
18  (9th Cir. 2003); see also Garrison, 759 F.3d at 1020 (noting that
19  Connett established that credit-as-true rule may not be
20  dispositive in all cases); Treichler, 775 F.3d at 1101 (noting
21  that remand for benefits is inappropriate when "there is
22  conflicting evidence, and not all essential factual issues have
23  been resolved").

24      Here, remand for further proceedings is appropriate because
25  the ALJ erred in assessing Plaintiff's credibility.  It may well
26  be that the ALJ had adequate reasons to find Plaintiff's
27  statements not credible but simply failed to express them.
28  Indeed, as the Commissioner notes (J. Stip. at 18-19), Plaintiff

13

herself believed she could work; moreover, several of her statements regarding her symptoms and abilities were inconsistent. (<u>Compare</u> AR 213 (May 2013, alleging need for help with dressing and caring for hair) <u>with</u> AR 238 (Aug. 2013, alleging "no problem" with personal care including dressing and caring for hair); <u>compare</u> AR 190 (Mar. 2013, alleging that conditions became severe enough to preclude work in Jan. 2013) <u>and</u> AR 100 (Oct. 2013, alleging total disability and inability to work) <u>with</u> AR 31 (July 2014, alleging ability to work at previous job); <u>compare</u> AR 214 (May 2013, alleging "diagnoses" of anxiety, depression, "[d]ifficulties with social functioning," and "[e]motional withdrawal and isolation") <u>with</u> AR 237-46 (Aug. 2013, failing to mention any problems with anxiety, depression, social functioning, and emotional withdrawal) <u>and</u> AR 242-43 (Aug. 2013, alleging that she had no "unusual behavior or fears" and could handle stress well, get along with others, handle changes in routine well, and follow written and spoken instructions well).)  Thus, remand for further credibility analysis and findings is appropriate.

Upon remand, the ALJ may, if warranted, make further findings regarding Plaintiff's obesity and solicit additional VE testimony regarding Plaintiff's use of an oxygen tank in the workplace.

14

**VI.   CONCLUSION**

Consistent with the foregoing and under sentence four of 42 U.S.C. § 405(g),[3] IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner, GRANTING Plaintiff's request for remand, and REMANDING this action for further proceedings consistent with this Memorandum Decision.  IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.


DATED: <u>July 6, 2016</u>         JEAN ROSENBLUTH
                                  JEAN ROSENBLUTH
                                  U.S. Magistrate Judge

---

[3] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

15